UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BEVERLY E. BLACK and
JAMES A. BLACK,

                    Plaintiffs,

          v.                                              **DECISION AND ORDER**
                                                          07-CV-853S

GEORGE WESTON BAKERIES, INC.,
GEORGE WESTON BAKERIES
DISTRIBUTION, INC.,
STROEHMANN BAKERIES, L.C., and
STROEHMANN BAKERIES, INC.,

                    Defendants.


## I. INTRODUCTION

Plaintiffs, Beverly Black and James Black, allege that Defendants, George Weston Bakeries, Inc., George Weston Bakeries Distribution, Inc., Stroehmann Bakeries, L.C. and Stroehmann Bakeries, Inc., have operated, and continue to operate, their bakeries in a manner that causes harm to Plaintiffs' properties. As a result, Plaintiffs assert seven claims against Defendants. (Am. Compl., Docket No. 12)[1]. Presently, before this Court is Defendants' Motion to Dismiss each of Plaintiffs' claims in the Complaint. (Docket No. 14). For the reasons stated below, Defendants' motion is granted in part and denied in part.

---

[1]Plaintiffs filed an original complaint (Docket No. 1), but later amended their complaint. (Docket No. 12).

## II. BACKGROUND

### A.    Facts

Plaintiffs own rental properties located at 125, 125 ½, 127, and 127 ½ North Second St., Olean, NY, and a residence located at 129 North Second St., Olean, NY. (Am. Compl., Docket No. 12, ¶¶2-3).   At all times pertinent to this action, Defendants owned and operated a bakery, on the same block, specifically, 111 North Second St, Olean, NY. (Id., ¶¶12-20).   Plaintiffs allege that the bakery has emitted "noxious discharges," including mold, mold spores, and fungus. (Id., ¶21).   Plaintiffs allege that these emissions aerosolized and have coated Plaintiffs' properties with mold and mold residue. (Id., ¶22).   Plaintiffs allege that this mold and its residue has discolored their properties with a blackened appearance, and damaged the exterior of their properties. (Id., ¶¶23 & 24).   Plaintiffs further allege that they have repeatedly attempted to remove the mold and repaint their properties to alleviate the unsightly appearance caused by Defendants' emissions. (Id., ¶25).   But these attempts have allegedly been unsuccessful, and Plaintiffs maintain that they have suffered loss of rental income by having to seek reduced rental costs as well as difficulty in finding replacement tenants. (Id., ¶34).   Plaintiffs also allege that they have suffered a loss of resale value in both their home and rental properties. (Id., ¶35).

Plaintiffs complained to Defendants about their emissions by letter dated December 16, 2005. (Id., ¶41).   Defendants responded to the letter by questioning the source of the emissions. (Exhibit B, Docket No. 12-2).[2]   After receiving Defendants'

---

[2]This Court is considering attachments that were filed with the Amended Complaint.

response, Plaintiffs forwarded a Forensic Microbiological Investigation Report by Building Science Investigations, Inc., ("Report") to Defendants' counsel. (Id.).  The Report, dated April 10, 2006, concludes that the bakery is the source of the mold growth. (Id.).  The Report noted the high incidence of mold in the proximity of, and downwind from, the bakery; mold growth in the rear of the bakery, especially around doors and exhaust fans; and mold growth concentrated on the bakery-side of nearby trees. (Id.).  Investigators isolated samples of the fungi *Aureobasidum pullulans, Cladosporium cladosporioides,* and *Cladosporium sphaerospermum* from Plaintiffs' residence and the surrounding neighborhood.   Most prevalent was *Aureobasidum pullulans.* (Id.).  This species of fungi is associated with wheat, barley, oat, and flour products, and was present in air samples collected downwind from the bakery, but not upwind. (Id.).  In sum, Plaintiffs, maintain that the Report's findings corroborate their claims.

Despite Plaintiffs' letter and the findings contained in the Report, the emissions did not cease. On June 12, 2006, the New York State Department of Environmental Conservation ("DEC") wrote to Defendants' counsel to confirm the Report's findings and direct that Defendants cease emissions and take steps to remedy the damage.  (Exhibit A., Docket No. 12-2).   The letter dismissed various assertions by Defendants that Defendants argued should relieve them of responsibility and informed Defendants that they were in violation of 6 NYCRR Part 211.2. (Id.).

### B.    Procedural History

Plaintiffs commenced this action in New York State Supreme Court for the County of Cattaraugus on November 14, 2007.  The case was removed to this Court on December 27, 2007, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. (Docket No. 1).  On January 4, 2008, Defendants filed a Motion to Dismiss Plaintiffs' Complaint. (Docket No. 8).  As a result, Plaintiffs filed an Amended Complaint on January 30, 2008. (Docket No. 12).  In response, on February 19, 2008, Defendants filed a Motion to Dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 14).

### C.    Overview of Plaintiffs' Claims

Plaintiffs assert seven causes of action against Defendants. (Am. Compl., Docket No. 12).  Specifically, Plaintiffs allege that Defendants' operation of their bakery constituted: (1) negligence; (2) a violation of the Clean Air Act; (3) trespass; (4) private nuisance; and (5) public nuisance.  In their sixth cause of action, Plaintiffs allege that they are entitled to punitive damages and in their seventh cause of action, Plaintiffs request an injunction.

### III. DISCUSSION

### A.    Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint where Plaintiff has "fail[ed] to state a claim upon which relief can be granted."

FED. R. CIV. P. 12(b)(6).  In determining whether a complaint states a claim, the Court construes the complaint liberally, accepts all factual allegations as true, and draws all reasonable inferences in Plaintiffs' favor.  ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.2007); Goldstein v. Pataki, 516 F.3d 50, 56-57 (2d Cir.2008).  While the complaint need not include detailed factual allegations, a plaintiff must show the "grounds of his entitlement to relief." Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).  To survive a motion to dismiss under  Rule 12(b)(6), Plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.

### B.      First Cause of Action: Negligence

Plaintiffs first assert a negligence claim against Defendants. (Am. Compl., Docket No. 12, ¶¶27-36).  In support of their claim, Plaintiffs allege that Defendants have a duty to maintain their premises (Id., ¶28), that Defendants breached that duty by failing to prevent noxious emissions from escaping their property (Id., ¶¶ 29), which traveled to Plaintiffs' properties, depositing mold and mold spores on their properties, and damaged Plaintiffs' properties. (Id., ¶¶29-33).  In their Motion to Dismiss, Defendants argue that Plaintiffs' claims are barred by the economic loss rule and that Plaintiffs do not allege that their "property damage claims are permanent." (Docket No. 17).

"It is beyond dispute that landowners and business proprietors have a duty to maintain their properties in reasonably safe condition." DiPonzio v. Riordan, 679 N.E.2d 616, 618 (N.Y., 1997).  However, landowners have no duty to protect "entire urban neighborhoods against purely economic losses." 532 Madison Ave. Gourmet Foods,

Inc. v. Finlandia Center, Inc., 750 N.E.2d 1097, 1102 (N.Y., 2001)  (commonly referred to as the "economic loss rule").  If an injury is based on the diminution in value of one's property, "the property owners must show: (1) that their properties have been physically damaged, *or* that their use and enjoyment of their properties has been unreasonably interfered with, by defendant's actions, *and* (2) either that the trespass or nuisance thus created cannot be fully remediated, *or* that the cost of remediation would exceed the amount by which the value of the properties has been diminished." Mehlenbacher v. Akzo Nobel Salt, Inc., 71 F.Supp.2d 179, 188 (W.D.N.Y., 1999) (Larimer, J.) (emphasis added).

The economic loss rule does not apply to the case at bar.  As the Court in 532 Madison Ave. found, "a comparison of Beck v. FMC Corp., 53 A.D.2d 118, 121 (N.Y.A.D., 1976), and Dunlop Tire & Rubber Corp. v. FMC Corp., 53 A.D.2d 150, 154-155 (N.Y.A.D., 1976) is instructive." 532 Madison Ave., 96 N.Y.2d at 291.  Both cases involved a single explosion from a manufacturing plant, which caused physical damage to nearby factories, and forced their closure.  In Dunlop Tire, the plaintiffs sought recovery for property damage and lost profits. In contrast, the plaintiffs in Beck, employees of a nearby Chevrolet factory, which was closed because of the same explosion, attempted to bring a suit solely for lost wages.  However, the economic loss rule barred the plaintiffs' recovery in Beck. Beck, 53 A.D.2d at 121.  In Beck, the court applied the economic loss rule because the plaintiffs sought only lost wages–economic loss–unlike in Dunlop Tire, where the economic loss rule did not apply, because the plaintiffs sought lost wages *and* property damage.

Similar to Dunlop Tire, Plaintiffs in this case allege both financial loss and property damage.  Plaintiffs allege that their properties are covered with mold, mold spores, and residue. (Am. Compl., Docket No. 12, ¶22).  Further, Plaintiffs allege that such mold has discolored their properties with a blackened appearance (Id. at ¶23) and has damaged the exterior of their properties (Id. at ¶24).  Accordingly, Plaintiffs do not assert injury only for economic loss as Defendants contend, and therefore, the economic loss rule does not apply.

Defendants also argue that Plaintiffs fail to allege "permanent property damage," and therefore Plaintiffs' negligence claim should be dismissed because New York law requires such an allegation. (Docket No. 14).  Defendants cite the second prong of Mehlenbacher, which requires Plaintiffs to show, "either that the trespass or nuisance thus created cannot be fully remediated, or that the cost of remediation would exceed the amount by which the value of the properties has been diminished." Mehlenbacher, 71 F.Supp.2d at 188.  However, Defendants exclusively focus on the "cannot be fully remediated" portion of Mehlenbacher as standing for a requirement of permanent property damage. (Docket No. 14).  Defendants espouse various policy scenarios that will purportedly occur should this Court refuse to dismiss Defendants'  motion.[3]

Defendants' argument is also rejected.  First, New York law does not require permanent property damage.  The second half of the second prong of Mehlenbacher, clearly states, "...or that the cost of remediation would exceed the amount by which the

---

[3]In their Memorandum in Support of the Motion to Dismiss (Docket No. 14), Defendants state, "[u]sing the precedent set by this Court, what will stop a building owner from suing the local transit authority for soot marks on his building 'caused by the emissions' of the local bus or train? What would stop that same building owner from suing the local school district for discolorations on his building 'caused by the emissions' of the local school buses?...Put simply, there is no duty owed."

value of the properties has been diminished." Mehlenbacher, 71 F.Supp.2d at 188. (emphasis added).   Moreover, the cases that Defendants cite for the alleged requirement of permanent property damage are from outside this district and do not apply the Mehlenbacher standard. (Docket No. 14).   Secondly, this Court finds Defendants' policy arguments neither persuasive nor controlling.


**C.     Second Cause of Action: Clean Air Act**

Plaintiffs' allege that Defendants violated the Clean Air Act, 42 U.S.C. §7401 *et seq*. (37-46).   Defendants seek dismissal of this claim for failure to state a claim. (Docket No. 14).   For the reasons stated below, Defendants' motion to dismiss this claim is granted.

The Clean Air Act ("CAA") has been referred to as a "model of cooperative federalism." Ellis v. Gallatin Steel Co., 390 F.3d 461, 467 (6th Cir, 2004); Appalachain Power Co. v. E.P.A., 249 F.3d 1032, 1046 (C.A.D.C., 2001); *Cooperative Federalism and the Clean Air Act: A Defense of Minimum Federal Standards*, 20 St. Louis U. Pub.L.Rev. 67, 76 (2001).   This description reflects the responsibilities of both the federal and state governments in enforcement of the CAA.   For example, the federal government, through the Administrator of the Environmental Protection Agency ("EPA"), establishes a minimum standard for regulated pollutants. 42 U.S.C. §7409(b)(1).   These standards are known as the "National primary ambient air quality standards" and commonly referred to as the "NAAQS." Id.   After the EPA Administrator establishes the NAAQS, the individual states must then submit a plan for the "implementation, maintenance, and enforcement of such primary standard(s)."   42 U.S.C. §7410 (a)(1).

8

In order to be actionable, these state submissions, known as the "State Implementation Plans" ("SIP"), must be approved by the EPA Administrator. 42 U.S.C. §7604(f)(4).

In this case, Plaintiffs allege that Defendants violated a New York State SIP, specifically, Title 6, section 211.2 of the Code of Rules and Regulations of the State of New York.  (Am. Compl. Docket No. 12, ¶38).  However, Section 211.2 was removed from the federally approved New York SIP in 1998 after the EPA found that it approved this SIP "in error." See 63 Fed. Reg. 65557-01 (Nov. 27, 1998).  Therefore, this SIP cannot be the platform upon which Plaintiffs bring a CAA private suit.

## D.      Third Cause of Action: Trespass

Plaintiffs allege that Defendants' mold-producing emissions constitute a trespass on their property.   Defendants argue that "Plaintiffs fail to state a cause of action because Plaintiffs do not assert that Defendants acted with intent." (Docket 14).  For the following reasons, Defendants' motion to dismiss is denied.

Under New York law, "trespass is the intentional invasion of another's property." Scribner v. Summers, 84 F.3d 554, 557 (2d Cir. 1996).  To be liable, the trespasser "need not intend or expect the damaging consequences of his intrusion, *he must intend the act* which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does, or which he does so negligently as to amount to willfulness.  To constitute such a trespass, the act done must be such as 'will to a *substantial certainty* result in the entry of the foreign matter.'" Abbatiello v. Monsanto, 522 F.Supp.2d 524, 541 (S.D.N.Y. 2007) (citing Phillips v. Sun Oil Co.,121 N.E.2d 249, 250-51 (N.Y. 1954) (emphasis added)).

9

It appears undisputed that Defendants intended the act–baking–that allegedly produced the noxious substances.  Since Plaintiffs, the DEC, and Building Science Investigations allegedly notified Defendants that their emissions were traveling onto Plaintiffs' properties and depositing mold spores on them, it is reasonable to assume that Defendants knew, with substantial certainty, that their continued operation of the bakery resulted in the entry of foreign matter onto Plaintiffs' properties.  Despite such knowledge, Defendants continued to operate the bakery.

Defendants contend that the "legal threshold [for an actionable trespass claim] is not met because the discoloration of neighboring structures is not an immediate or inevitable consequence of baking." (Docket No. 17).  This argument is misplaced.  The relevant inquiry is simply whether the intrusive act–the entry of physical matter onto Plaintiffs' property–is the inevitable consequence of Defendants' willful, or negligent, management and continued operation of their property and their  bakery.  In this case, the alleged entry of the noxious substances and mold onto Plaintiffs property can reasonably be said to be the inevitable consequence of Defendants negligent management of their property.

The facts of this case are analogous to Abbatiello v. Monsanto Co., 522 F.Supp.2d 524 (S.D.N.Y. 2007), a case where the Court denied the defendant's motion to dismiss the plaintiff's trespass claim.  In Monsanto Co., the defendant disposed of PCB-containing products on their own land, which eventually migrated onto plaintiff's land.  The plaintiff subsequently brought a trespass claim while the defendant argued against the plaintiff's claim by contending it never intended the PCB products to travel onto the plaintiff's land.  The Court held that the plaintiffs adequately alleged that the

defendants knew or should have known that the PCBs would migrate onto the plaintiff's properties and therefore the plaintiff's alleged a valid claim for trespass. Monsanto Co., 522 F.Supp.2d at 542.   In this case, based on the letters by Plaintiffs and the DEC, along with the Report, this Court finds that Plaintiffs have adequately alleged that Defendants actually knew that the operation of their bakery was causing pollutants to migrate onto Plaintiffs' properties making this even a stronger case than the plaintiffs in Monsanto Co.[4]

E.      **Fourth Cause of Action: Private Nuisance**

Plaintiffs allege that Defendants' operation of their bakery constitutes a private nuisance because Defendants' use of their property substantially interferes with Plaintiffs peaceful and quiet enjoyment of their properties. (Am. Compl., ¶¶ 57, 58). Defendants contend that Plaintiffs' claim should be dismissed because Plaintiffs' claim is neither "private" nor do Plaintiffs assert that Defendants acted with intent. (Document 14).  For the reasons listed below, Defendants' motion is denied.

A private nuisance "threatens one person or a relatively few, an essential feature being an interference with [Plaintiffs] use or enjoyment of land."  Copart Indus., Inc. v. Consol. Edison Co. of N.Y., 41 N.Y.2d 564, 568 (N.Y., 1977) (citations omitted).  A private nuisance differs from a public nuisance, which is interference with a public right.

---

[4] Defendants' argument that Monsanto Co. is distinguishable is without merit. (Docket No. 17). Defendants argue that because the trespassing pollutants in Monsanto Co. were "man-made" and "never occur naturally," Monsanto Co. does not apply to the facts of this case. (Docket No. 17).  However, whether the trespassing matter is naturally occurring or not is not controlling.  B & R Luncheonette v. Fairmont Theatre Corp., 103 N.Y.S.2d 747 (N.Y.A.D., 1 Dept., 1951) (finding a trespass where water spray from defendant's cooling tower fell into defendant's yard); MacDonald v. Parama, Inc., 224 N.Y.S.2d 854 (N.Y. A.D., 2 Dept., 1962) (finding a trespass where defendant's improvements to his own land resulted in sand, dirt, and mud overrunning the plaintiff's property).

Andersen v. University of Rochester, 91 A.D.2d 851, 851 (N.Y.A.D., 4 Dept., 1982).  A person is liable for private nuisance "if his conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is intentional and unreasonable, negligent or reckless..." Copart Indus., Inc., 41 N.Y.2d at 569.

Plaintiffs' claim is properly considered private because Plaintiffs allege that Defendants unreasonably interfered with their right to the use and enjoyment of their own property. Andersen, 91 A.D.2d at 853. ("[a] private nuisance occurs when defendant interferes unreasonably with plaintiff's right to use and enjoy his property."). Although Defendant notes that Plaintiffs allege that Defendants "substantially interfere[d] with the quiet enjoyment and property use *in the community at large*," (P 62), private and public nuisance claims are not mutually exclusive. Cox v. City of Dallas, Tex., 256 F.3d 281, 290 (5th Cir., 2001) ("When the nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land, it is a private nuisance as well as a public one."); Restatement (Second) of Torts § 821C (1976).  Therefore, Plaintiffs can allege, as they do, that Defendants interfered with a public right and the community at large, without precluding Plaintiffs' claim for private nuisance.

For the reasons discussed in relation to Plaintiffs' trespass claim, this Court also finds that Plaintiffs adequately allege that Defendants acted with intent.  Moreover, since this Court did not dismiss Plaintiffs' negligence claim, the second element of the nuisance claim is adequately pleaded. Monsanto Co., 522 F.Supp.2d at 540. ("Because the Court did not dismiss the Landowners' claims of negligence and abnormally dangerous activity, the second element of the nuisance claim is adequately pleaded.").

In light of the foregoing reasons, Defendants' motion to dismiss Plaintiffs' private nuisance claim is denied.

**F.      Fifth Cause of Action: Public Nuisance**

Plaintiffs allege that Defendants' conduct constitutes a public nuisance. Defendants argue that Plaintiffs fail to state a claim because they do not plead special damages. (Docket 14).   For the following reasons, Defendants' motion to dismiss is denied.

A public nuisance "consists of conduct or omissions which interfere with rights common to all such as to [] endanger or injure the properties, health, safety or comfort of a considerable number of persons." Copart Indus., 41 N.Y.2d at 568.   A public nuisance "is an offense against the State and is subject to [] prosecution on application of the proper governmental agency." Id.   A private citizen has standing to bring a suit for public nuisance only when that individual pleads special damages. Saks v. Petosa, 184 A.D.2d 512, 513 (N.Y.A.D., 2 Dept., 1992) (citing Copart Indus., 41 N.Y.2d 564, 568). Pleading a diminution in value of one's home and property qualifies as special damages for purposes of establishing standing in a public nuisance suit. Allen v. General Elec. Co., 2003 WL 22433809, *4 (N.Y.Sup. 2003) ("[s]tanding to bring action may be established by special damages consisting of diminution of value of their home and property.") (citing Santulli v. Drybka, 196 A.D.2d 862, 863 (N.Y.A.D., 2d Dept., 1993).

Plaintiffs have pleaded special damages because they allege that Defendants' conduct caused their properties to diminish in value. (Am. Compl., ¶¶ 33, 35, 55, & 59).

As a result, Plaintiffs have standing to bring a public nuisance suit. Accordingly, Defendants' motion to dismiss Plaintiffs' claim for public nuisance is denied.

**G.      Sixth Cause of Action: Punitive Damages**

In their Amended Complaint, Plaintiffs set forth a claim for punitive damages. Defendants argue that their alleged conduct in this case, even if proven, does not rise to the requisite level of reprehensibility, necessary to award punitive damages. Specifically, Defendants argue that Plaintiffs' claims fail because "they have not alleged facts, which if true, constitute near criminal conduct by Defendants." (Docket No. 17).

A plaintiff must meet a high standard in order to obtain an award of punitive damages. Lucas v. Kensington Abstract LLC, 2008 WL 3823776, *6 (N.Y.Sup., 2008) (..."First American's conduct would not meet the high standard for punitive damages."). "Punitive damages are warranted where the conduct of the party being held liable evidence a high degree of moral culpability or where the conduct is so flagrant as to transcend mere carelessness, or where the conduct constitutes willful or wanton negligence of recklessness." Booth v. Hanson Aggregates New York, Inc., 16 A.D.3d 1137, 1139, 791 N.Y.S.2d 766, 2 (NY, 2005). Punitive damages are intended as a "punishment for gross misbehavior...[however], [s]uch conduct need not be intentionally harmful..." Home Ins. Co. v. Am. Home Prods Corp., 75 N.Y.2d 196, 203-204 (N.Y., 1990).

After viewing the evidence in a light most favorable to Plaintiffs, this Court finds that it would not be unreasonable to conclude that Defendants' conduct constituted reckless, or wantonly negligent, gross misbehavior. For example, Defendants were

14

allegedly warned about their emissions on more than one occasion, by multiple sources, including one governmental agency.   Despite such warnings, Defendants allegedly persisted in their allegedly harmful conduct.  For these reasons, Defendants' motion to dismiss Plaintiffs' claim for punitive damages is denied.


**H.      Seventh Cause of Action: Injunctive Relief**

In their seventh cause of action, Plaintiffs request injunctive relief.   However, Plaintiffs concede that they are not entitled to injunctive relief at this time and ask that this claim be "preserved." (Docket No. 16).   Accordingly, the Court will treat this claim as withdrawn without prejudice and will not address the merits of Plaintiffs' claim at this time.


**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part.  Specifically, Defendants' Motion to Dismiss Plaintiffs' second cause of action, a citizen suit claim under the Clean Air Act, is granted.   Additionally, Defendants' Motion to Dismiss Plaintiffs' first, third, fourth, fifth, and sixth causes of action is denied.   Lastly, Plaintiffs' seventh cause of action is treated as withdrawn without prejudice.

**V. ORDER**


IT HEREBY IS ORDERED Defendants' Motion to Dismiss (Docket No. 14) is GRANTED in part and DENIED in part, consistent with the foregoing Decision and Order.

SO ORDERED.



Dated:  November 13, 2008
        Buffalo, New York


<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge